1  Rebecca Ablan
   P.O. Box 93014
2  Phoenix, AZ 85070
   Tel: 480-430-8749
3  AblanRebecca@yahoo.com

4  *pro per* litigant

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9  REBECCA ABLAN,                    Case No. **CIV '10 2018 PHX        LOA**

10                 Plaintiff,                    **COMPLAINT**

11  v.

12  OVATIONS FOOD SERVICES, L.P.;
13  KAREN DOE; CHRIS TRUJILLO; and
14  JOHN and JANE DOES 1-20, inclusive,

15                 Defendants.

16

17

18      Plaintiff REBECCA ABLAN alleges as follows:

19                        **PARTIES**

20
21      1.      Plaintiff REBECCA ABLAN is now, and at all times mentioned in this

22  Complaint was, a resident of Maricopa County, State of Arizona.

23      2.      At all times mentioned in this Complaint, Defendant OVATIONS FOOD

24  SERVICES, L.P. ("OVATIONS") was and is a foreign limited partnership, organized and

25  existing under the laws of the State of Pennsylvania, registered to do business in the State

26
27  of Arizona, and is an employer in Maricopa County, State of Arizona.

28

3.   At all times mentioned in this Complaint, Defendant KAREN DOE was and is a supervisor at OVATIONS.  Plaintiff is unaware of her last name and therefore sues her as DOE, and will plead leave to amend and add her surname upon obtaining such. Upon information and belief, KAREN DOE is a resident of Maricopa County, State of Arizona.

4.   At all times mentioned in this Complaint, Defendant CHRIS TRUJILLO was and is a bartender at OVATIONS, and is a resident of Maricopa County, State of Arizona.

5.   Defendants JOHN and JANE DOES 1-20, inclusive, were at all times relevant herein employers, employees, agents, partners and joint venturers and Plaintiff is ignorant to the true names and capacities of Defendants sued herein as DOES 1-20, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will pray leave of this court to amend this Complaint to allege the true names and capacities when ascertained.

6.   Plaintiff REBECCA ABLAN is informed, believes, and thereon alleges, that each of the Defendants herein was, at all times relevant to this action, the agent, employee, representing partner, or joint venturer of the remaining Defendants and was acting within the course and scope of that relationship. Plaintiff is further informed, believes, and thereon alleges, that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

7.   Defendants and each of them are sued in their individual and corporate capacities.

8.    Defendants are joint and severally liable for the injuries and damages sustained by Plaintiff REBECCA ABLAN.

### JURISDICTION AND VENUE

9.    This action is brought pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e *et seq*.), and the jurisdiction of this Court is invoked to secure protection and redress for the deprivation of rights guaranteed by federal and state law, which rights provide for injunctive and other relief for illegal discrimination in employment.  This court has jurisdiction of the claims herein pursuant to 42 U.S.C.A. § 2000e-5(f)(3), 28 U.S.C.A. §§ 1331 and 1343(4), and 42 U.S.C. § 2000d-4a.

10.    Plaintiff alleges that the Defendants have engaged in acts or omissions within and without Maricopa County, Arizona, as set forth more specifically *infra*, causing harm and damages to Plaintiff in an amount exceeding seventy-five-thousand dollars ($75,000.00).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.    Venue herein is proper under, *inter alia*, 28 U.S.C.A. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) as the unlawful employment practice of which Plaintiff is complaining was committed in Maricopa County in the State of Arizona.

12.    At all times mentioned in this Complaint, Defendant OVATIONS regularly employed fifteen or more persons, bringing Defendant employer within the provisions of Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e *et seq*., as amended (“**Title VII**”) and A.R.S. § 41-1461 *et seq*. (the “**Arizona Civil Rights Act**” or “**ACRA**”).

13.    At all times since termination of employment, Plaintiff REBECCA ABLAN has in good faith attempted to procure equivalent and substantially comparable employment.

14.    All conditions precedent to jurisdiction have been complied with, to wit: timely charges of employment discrimination were filed with the Equal Employment Opportunity Commission and the Arizona Civil Right Division, and a Right to Sue letter was received; this Complaint has been filed after receipt of the Right to Sue letter, a copy of which is attached as Exhibit "1" hereto, and is incorporated by reference.

15.    Plaintiff REBECCA ABLAN was employed, and engaged in all her employment activities, in the County of Maricopa, State of Arizona.

16.    Defendant OVATIONS employs persons in the County of Maricopa.

17.    All the parties to this action are either residents of Maricopa County or maintain a business in Maricopa County.

18.    The damages are within the limitations of this Court and were incurred in Maricopa County.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES

19.    Plaintiff REBECCA ABLAN was employed by Defendant OVATIONS in or around December 2009.

20.    Plaintiff REBECCA ABLAN began working as a bartender for Defendant OVATIONS in or around February 2010.

21.    On May 29, 2010, Plaintiff REBECCA ABLAN was working as a bartender, along with Defendant CHRIS TRUJILLO.  On that day, Defendant CHRIS

TRUJILLO assaulted Plaintiff REBECCA ABLAN when he grabbed her buttocks while she was working. Later that same day, Defendant CHRIS TRUJILLO put his arm around Plaintiff's neck and forcibly pulled her against his body, and attempted to kiss Plaintiff REBECCA ABLAN. When Plaintiff tried to pull free from the physical control of Defendant CHRIS TRUJILLO, he said "now it looks like we kissed so we can both get called into the office."

22.     A few minutes after the assaults occurred, even though Defendant CHRIS TRUJILLO had attempted to make sure the surveillance was misinterpreted, Plaintiff REBECCA ABLAN reported the assault to security.

23.     When Plaintiff reported the assault to security on May 29, 2010, security responding by telling Plaintiff REBECCA ABLAN she can just tell Defendant CHRIS TRUJILLO that she is not that kind of girl, or she can turn him in. Plaintiff REBECCA ABLAN made a report.

24.     On May 30, 2010, when Plaintiff REBECCA ABLAN reported to work, most of her co-workers made her aware that they already knew about the assault.

25.     On May 30, 2010, Plaintiff REBECCA ABLAN was questioned by two customers as to why she had reported Defendant CHRIS TRUJILLO and why she wanted to get him fired.

26.     On May 31, 2010, Plaintiff REBECCA ABLAN came to work and was still required to work with the Defendant CHRIS TRUJILLO, who had just assaulted her.

27.     On May 31, 2010, when Plaintiff REBECCA ABLAN became aware she was to work with her assailant, she requested to know why she was being forced to work

with her assailant.  Plaintiff's supervisor informed her that the General Manager made the decision to have them working together.

28.     On May 31, 2010, during Plaintiff REBECCA ABLAN's shift, her bar back refused to provide support as per the job description.  In addition, another customer informed Plaintiff REBECCA ABLAN that he knew of the situation with Defendant CHRIS TRUJILLO and wanted to know what was going on.

29.     On May 31, 2010, Plaintiff REBECCA ABLAN informed her supervisor of the problems with the bar back and the questioning of her by the customers.

30.     On June 1, 2010, Plaintiff REBECCA ABLAN was contacted by human resources at 5:30 p.m., with a message to contact him with a time they could meet on June 2, 2010.

31.     On June 1, 2010, when Plaintiff REBECCA ABLAN Plaintiff REBECCA ABLAN was then informed by the General Manager that human resources had more pressing matters and did not have time to speak with her.

32.     On June 1, 2010, after being spoken to by the General Manager, Plaintiff REBECCA ABLAN left a message for human resources that she was scheduled to work on June 2, 2010, and that she would submit her statement in writing and to call her if this was a problem.

33.     On June 2, 2010 the General Manager left Plaintiff REBECCA ABLAN a voicemail to come in at 10:30 a.m. the next day to speak with the human resources officer and another person.

34.     On June 2, 1010 after Plaintiff REBECCA ABLAN received this message, she informed the General Manager she could not work as she was already scheduled to work at her other job, and that she would come to work early on June 2, 2010 to meet with them.  When Plaintiff REBECCA ABLAN clocked in early on June 2, 2010 in order to have the pre-arranged  meeting, she was told by the General Manager the meeting had to be on Friday June 4, 2010.  Plaintiff REBECCA ABLAN informed the General Manager that she was also working at her other job at that time.  Plaintiff REBECCA ABLAN questioned the General Manager if anything had been done about the assault and he informed her nothing had been done because they had not heard her side of the story. Plaintiff REBECCA ABLAN informed him she had already provided her report to security and a supervisor the night the assault occurred.  Plaintiff REBECCA ABLAN also informed the General Manager that she had been informed Defendant CHRIS TRUJILLO admitted the report was true and that she had tried to meet with the human resources officer yesterday, but he was too busy to speak with her.  Plaintiff REBECCA ABLAN informed the General Manager that she was going to file a report with the EEOC and retain a lawyer because of their refusal to address the assault.

35.     On June 2, 2010, only after being informed by Plaintiff REBECCA ABLAN that she was going to file an EEOC report and obtain a lawyer, the General Manager called her into his office along with a supervisor and informed Plaintiff REBECCA ABLAN that if she chose to continue with a lawyer she would be suspended during the investigation.  Plaintiff REBECCA ABLAN informed them she believed this was a violation of the law.  The General Manager then demanded to know if she was willing to

1   work in the prevailing environment and Plaintiff REBECCA ABLAN said yes she would

2   work as they told her to do, as they had already made her work with her assailant since the

3   attack.

4

5       36.     The General Manager then requested contact information for Plaintiff

6   REBECCA ABLAN's attorney and said to wait.  Plaintiff REBECCA ABLAN called the

7   General Manager to determine if she was going to work that evening, he did not answer

8   the call.  Plaintiff REBECCA ABLAN contacted a supervisor, Defendant KAREN DOE,

9   and requested that she find the General Manager and then Plaintiff REBECCA ABLAN

10

11  began her work.

12      37.     On June 3, 2010, shortly after she began working, Plaintiff was called into

13  the General Manager's office and several human resources officers were there.  Human

14

15  resources wanted to talk to her about the assault.  Given the response of OVATION's

16  management thus far, Plaintiff was very uneasy about this and told them she would give

17  them a written statement, but would only speak if her attorney was present.  Plaintiff

18  REBECCA ABLAN was questioned about why she was handling it in this manner.

19

20  Plaintiff informed them it was because this had happened on May 29, 2010, when she

21  made a full report, and they had yet to talk with her – all while making her work with her

22  assailant.  Plaintiff REBECCA ABLAN provided information about what occurred when

23  she was assaulted, and also relayed that the General Manager told her she would be

24

25  suspended.   Human resources stated they would begin an investigation.   Plaintiff

26  REBECCA ABLAN asked them if the tapes would be placed on hold and not destroyed.

27  Human resources responded that the tapes would be preserved only if Plaintiff requested

28

the hold, but they had not yet reviewed the tapes.  Plaintiff REBECCA ABLAN was then sent back to work.

38.    On June 3, 2010, shortly after returning to work, Plaintiff REBECCA ABLAN was again called into the office and informed that she could call the Gila River Police but they did not have the number and that she would have to Google it.

39.    On June 4, 2010, when Plaintiff REBECCA ABLAN reported to work her work schedule had been changed and she was moved to a less desirable work location, at which location she made less income.  Plaintiff REBECCA ABLAN was told she would remain at the less desirable location.

40.    On June 4, 2010, Plaintiff REBECCA ABLAN was informed that human resources wanted to meet with her in the General Manager's office, the meeting occurred and Plaintiff REBECCA ABLAN returned to work after being told she was not allowed to be told the status of her attacker.

41.    After meeting with human resources, Plaintiff's co-workers and supervisors began to be hostile and abusive towards her, when they had never harassed her prior to Plaintiff's report of being sexually assaulted.  Some of the harassment to which Plaintiff was subjected is detailed below.

42.    On June 5, 2010, Plaintiff REBECCA ABLAN was given a tip by a customer and Defendant KAREN DOE refused to give it to her, would not speak with her, and in fact walked away when addressed.

43.    On June 5, 2010, when it came time to count out her tips, Plaintiff REBECCA ABLAN requested Patty, an OVATIONS supervisor, to count her out.  A

black jack dealer overheard the conversation and informed Patty that she had heard Defendant KAREN DOE yelling at Plaintiff.  When asked if she would write a statement, she refused because she did not want to have Defendant KAREN DOE upset at her.

44.    On June 5, 2010, while Patty was counting out Plaintiff REBECCA ABLAN, Defendant KAREN DOE came in and tried to take over the count out.  Patty explained to Defendant KAREN DOE that Plaintiff REBECCA ABLAN had asked Patty to count her out and Defendant KAREN DOE ignored this, pushed Patty out of the way and took Plaintiff REBECCA ABLAN's tip box. Plaintiff REBECCA ABLAN informed Defendant KAREN DOE that she wanted no more interaction with her and Defendant KAREN DOE left and Patty finished the count out.  Defendant KAREN DOE returned with two other bartenders and in their presence, told Plaintiff REBECCA ABLAN she would not sign Plaintiff REBECCA ABLAN's deposit and that Plaintiff REBECCA ABLAN needed to call Patty.  Plaintiff REBECCA ABLAN informed Defendant KAREN DOE that she had previously done this and Defendant KAREN DOE still refused. Plaintiff REBECCA ABLAN called Patty back to sign the deposit.  After this Defendant KAREN DOE told Plaintiff REBECCA ABLAN to obtain the complaint number or email from Patty.

45.    On June 6, 2010, Defendant KAREN DOE came into where Plaintiff REBECCA ABLAN was working and pulled aside the customer who had wished to complain and questioned him.

46.    Upon information and belief, on June 8, 2010 human resources viewed the tape of the May 29, 2010 assault.

47.     On June 15, 2010, with the situation still not resolved and the hostility of her work environment escalating, Plaintiff REBECCA ABLAN became ill at work and requested from Defendant KAREN DOE to go home.  Defendant KAREN DOE informed Plaintiff REBECCA ABLAN she would have to go to the medics and get a release from them in order to go home.  The medic informed Defendant KAREN DOE that Plaintiff REBECCA ABLAN needed to go home, and Defendant KAREN DOE informed the medic she needed a copy of the examination.  The medic informed Defendant KAREN DOE this was a violation of Plaintiff's privacy and she would not release it.  Defendant KAREN DOE then stated that she would inform the General Manager and he would take care of it.

48.     On June 16, 2010, Plaintiff REBECCA ABLAN met with the General Manager and human resources.   They informed Plaintiff that Defendant CHRIS TRUJILLO had been taken care of but they would not tell her how.  Plaintiff REBECCA ABLAN informed them of the retaliation she was being subjected to by other workers, that most of the staff members would not speak with her and that all the other staff were aware of the situation and it should not have been provided to them.  Plaintiff REBECCA ABLAN was told they would look into the situation.

49.     Plaintiff REBECCA ABLAN was not returned to the more desirable work location.

50.     On June 21, 2010, Plaintiff REBECCA ABLAN again became ill at work due to the stress, and was advised by the medic to go to the hospital.  The medic informed Plaintiff REBECCA ABLAN's supervisor, Defendant KAREN DOE, that Plaintiff should

be sent home and Plaintiff REBECCA ABLAN informed her she would not be in the next day, due to the illness.

51.     On June 23, 2010, Plaintiff REBECCA ABLAN went to a supervisor to give him a resignation due to the stress and the supervisor Jack informed her not to resign and that he wished she had come to him earlier with the problems with supervisor Defendant KAREN DOE.  He informed Plaintiff that she needed to speak with the general manager rather than resign.  During the ensuing discussion, the following items were discussed:

> A.     Plaintiff REBECCA ABLAN's request for a transfer;
>
> B.     Defendant KAREN DOE's informing the General Manager that Plaintiff REBECCA ABLAN was a no-show when she was known to be out sick; and
>
> C.     The continuing harassment and retaliation.

52.     On June 29, 2010, Plaintiff REBECCA ABLAN met with human resources again.  Plaintiff again informed them of the harassment and retaliation, and they demanded to know if she had told people of the sexual harassment incident.  Plaintiff REBECCA ABLAN informed them she had been confronted by persons and defended herself only.  Plaintiff again requested a transfer in lieu of being cut to two days per week work in order for her not to have to work with Defendant KAREN DOE.

53.     On July 6, 2010, Plaintiff REBECCA ABLAN went to Wild Horse Pass to meet with human resources and the food and beverage manager.  They interviewed her for a server position rather than a bartender position.

54.     On July 14, 2010, Plaintiff received a voicemail stating she would be starting the next day as a server.  Plaintiff REBECCA ABLAN called human resources and left a message with the person she had previously spoken to advising them that she had not agreed to take a demotion.

55.     On July 15, 2010, human resources called Plaintiff REBECCA ABLAN and informed her that no bartending positions were open so she could wait or take the server position.

56.     On July 26, 2010, Defendant OVATIONS was provided notice pursuant to Arizona Revised Statutes §23-1502 of the constructive discharge of Plaintiff REBECCA ABLAN.  Plaintiff REBECCA ABLAN spoke with human resources to set up a time to turn in her uniforms and badge.  She was informed she would have to come in on July 28, 2010 for an exit interview.

57.     On July 28, 2010 Plaintiff REBECCA ABLAN turned in her uniforms to human resources.

### COUNT I
### HARASSMENT/HOSTILE WORK ENVIRONMENT
### (Against All Defendants)

58.     Plaintiff REBECCA ABLAN reasserts and realleges each and every other paragraph of this Complaint as if fully restated herein.

59.     This cause of action is brought pursuant to Title VII and the ACRA.

60.    Plaintiff was subjected to two assaults while at work, and Plaintiff immediately reported them.

61.    Defendants, instead of protecting Plaintiff REBECCA ABLAN, forced her to work with her assailant, refused to investigate, moved her to a less desirable work location, allowed co-workers to refuse to speak with her, allowed customers to accost her, allowed supervisors to begin to write her up for things she did not do, attempted to demote her, tried to suspend her for filing an EEOC complaint and obtaining a lawyer, and did not discipline her assailant or KAREN DOE.

62.    Plaintiff was subjected to a hostile work environment as a result of those and other actions.

63.    Due to Plaintiff REBECCA ABLAN's complaints regarding harassment, Defendant OVATIONS knew or should have known that harassment was occurring and that Plaintiff was being subjected to a hostile work environment.  Defendant OVATIONS failed to conduct a reasonable investigation and/or take any remedial or protective actions.

64.    Defendants' actions against Plaintiff REBECCA ABLAN had no proper place in the employment relationship.  Plaintiff's injury is therefore the result of conduct not reasonably coming from within the compensation bargain and is therefore not within the purview of Workers' Compensation.

65.    Because Defendant OVATIONS is a limited partnership and as such can act only through its officers, agents, and employees, it is vicariously liable for Defendants' acts of harassment against Plaintiff REBECCA ABLAN.

66. As a direct, foreseeable and proximate result of Defendants' tortious acts, Plaintiff REBECCA ABLAN has suffered and continues to suffer substantial losses in earnings, job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage, the precise amount of which will be proven at trial.

67. Defendants committed the acts described in this Complaint oppressively, maliciously, and with an evil motive, entitling Plaintiff to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter provided.

### COUNT II
### RETALIATION
### (Again Defendants OVATIONS and KAREN DOE)

68. Plaintiff REBECCA ABLAN reasserts and realleges each and every other paragraph of this Complaint as if fully restated herein.

69. Plaintiff engaged in a protected activity when she first complained of the assaults by Defendant CHRIS TRUJILLO.

70. Upon the making of a complaint, Plaintiff REBECCA ABLAN was subjected to retaliation by co-workers, supervisor Defendant KAREN DOE began to write her up, refused to allow her to leave work when she was ill, tried to obtain her medical records, and many actions set forth above, all with no legitimate explanation for such adverse actions.

71.     There is an extremely close temporal proximity between Plaintiff's report(s) of the assaults by Defendant CHRIS TRUJILLO, and the adverse employment actions to which she was subjected.

72.     Defendants' acts of retaliation against Plaintiff REBECCA ABLAN had no proper place in the employment relationship.  Plaintiff's injury is therefore the result of conduct not reasonably coming from within the compensation bargain and is therefore not within the purview of Workers' Compensation.

73.     Because Defendant OVATIONS is a limited partnership and as such can act only through its officers, agents, and employees, it is vicariously liable for Defendants' act of retaliation against Plaintiff REBECCA ABLAN.

74.     As a direct, foreseeable and proximate result of Defendants' tortious acts, Plaintiff REBECCA ABLAN has suffered and continues to suffer substantial losses in earnings, job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage, the precise amount of which will be proven at trial.

75.     Defendants committed the acts described in this Complaint oppressively, maliciously, and with an evil motive, entitling Plaintiff to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter provided.

## COUNT III
## ASSAULT

**(Against Defendants CHRIS TRUJILLO and OVATIONS)**

76.     Plaintiff REBECCA ABLAN reasserts and realleges each and every other paragraph of this Complaint as if fully restated herein.

77.     Defendant CHRIS TRUJILLO assaulted Plaintiff REBECCA ABLAN as set forth above.

78.     Defendant OVATIONS was immediately informed of such assaults, and did nothing to remedy the situation; instead forcing Plaintiff REBECCA ABLAN to continue to work with her assailant until they moved Plaintiff REBECCA ABLAN to a less desirable work location.

79.     Defendant OVATIONS questioned Defendant CHRIS TRUJILLO and on information and belief he admitted both assaults.

80.     Defendant CHRIS TRUJILLO's assault of Plaintiff REBECCA ABLAN had no proper place in the employment relationship.  Plaintiff's injury is therefore the result of conduct not reasonably coming from within the compensation bargain and is therefore not within the purview of Workers' Compensation.

81.     Because Defendant OVATIONS is a limited partnership and as such can act only through its officers, agents, and employees, it is vicariously liable for Defendants' assault against Plaintiff REBECCA ABLAN.

82.     As a direct, foreseeable and proximate result of Defendants' tortious acts, Plaintiff REBECCA ABLAN has suffered and continues to suffer substantial losses in earnings, job benefits, and has suffered and continues to suffer humiliation,

embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage, the precise amount of which will be proven at trial.

83.     Defendants committed the acts described in this Complaint oppressively, maliciously, and with an evil motive, entitling Plaintiff to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter provided.

**COUNT IV**
**CONSTRUCTIVE DISCHARGE**
**(Against Defendant OVATIONS)**

84.     Plaintiff REBECCA ABLAN reasserts and realleges each and every other paragraph of this Complaint as if fully restated herein.

85.     This cause of action is brought pursuant to A.R.S. § 23-1502.

86.     Plaintiff REBECCA ABLAN's employment conditions included pervasive sexual harassment and retaliation.

87.     Those acts were committed by a supervisory employee and were of a continuous nature.

88.     Plaintiff REBECCA ABLAN was furthermore subjected to removal to a less desirable work location, demotion, and refusal to protect and secure her employment against another employee who has assaulted her, which the management was aware of and refused to address.

89.     Plaintiff REBECCA ABLAN's medical privacy was violated when Defendant KAREN DOE demanded the medic inform her with protected private medical information about Plaintiff REBECCA ABLAN's in order for her to leave work as the medic required.

90.     These conditions made it impossible for Plaintiff REBECCA ABLAN, or any reasonable person in her position, to do anything other than resign.

91.     Defendants' constructive discharge of Plaintiff REBECCA ABLAN had no proper place in the employment relationship. Plaintiff's injury is therefore the result of conduct not reasonably coming from within the compensation bargain and is therefore not within the purview of Workers' Compensation.

92.     Because Defendant OVATIONS is a limited partnership and as such can act only through its officers, agents, and employees, it is vicariously liable for Defendants constructive discharge against Plaintiff REBECCA ABLAN.

93.     As a direct, foreseeable and proximate result of Defendants' tortious acts, Plaintiff REBECCA ABLAN has suffered and continues to suffer substantial losses in earnings, job benefits, and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage, the precise amount of which will be proven at trial.

94.     Defendants committed the acts described in this Complaint oppressively, maliciously, and with an evil motive, entitling Plaintiff to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter provided.

## COUNT V
## NEGLIGENT SUPERVISION/RETENTION
## (Against Defendant OVATIONS)

95.    Plaintiff REBECCA ABLAN reasserts and realleges each and every other paragraph of this Complaint as if fully restated herein.

96.    Defendant OVATIONS had a duty to control and prevent the wrongful conduct against Plaintiff REBECCA ABLAN.  Specifically, an employer has a duty to take all reasonable steps necessary to provide a safe workplace free of assaults, and free of sexual harassment and retaliation.

97.    Defendant OVATIONS breached that duty and knew or should have known that a breach of this duty would cause injury to Plaintiff REBECCA ABLAN.

98.    But for the negligent supervision/retention allowing the above wrongful acts, Plaintiff REBECCA ABLAN would not have incurred loss of her job, damage to her reputation, and severe emotional distress.

99.    Because Defendant OVATIONS is a limited partnership and as such can act only through its officers, agents, and employees, it is vicariously liable for Defendant KAREN DOE's negligent supervision which breached its duty to Plaintiff REBECCA ABLAN.

100.    As a direct, foreseeable and proximate result of Defendant KAREN DOES's tortious acts, Plaintiff REBECCA ABLAN has suffered and continues to suffer substantial losses in earnings, job benefits, and has suffered and continues to suffer humiliation,

embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage, the precise amount of which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter provided.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff REBECCA ABLAN demands judgment against Defendants as hereinafter provided:

1.   For compensatory damages including lost wages, lost employee benefits, bonuses, mental and emotional distress, and other special and general damages according to proof;

2.   For an award of punitive damages;

3.   For an award of interest, including prejudgment interest, at the legal rate;

4.   For an award to Plaintiff of costs of suit incurred herein on all causes of action;

5.   For an award to Plaintiff of attorneys' fees and costs; and

6.   For an award to Plaintiff of such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED this 21st day of September, 2010.

Case 2:10-cv-02018-SRB   Document 1   Filed 09/21/10   Page 22 of 22

1

Rebecca Ablan
*pro per* litigant

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28